Argued and submitted October 26, 1981, reversed and
remanded November 10, reconsideration denied December 23, 1982,
petition for review allowed March 8, 1983 (294 Or 569)
See 297 Or 363, 686 P2d 332 (1984)
petition for attorney fees denied May 2, 1984 (68 Or App 1, 680 P2d 654)

# PIERCE,
*Petitioner,*

*v.*

# DOUGLAS SCHOOL DISTRICT NO. 4 et al,
*Respondents.*

## (CA A21227)

653 P2d 243

Jennifer Friesen, Eugene, argued the cause for petitioner. With her on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

Eldon F. Caley, Roseburg, argued the cause for respondent Douglas School District No. 4. With him on the brief was Neuner, Cole, Caley & Kolberg, Roseburg.

Jan P. Londahl, Assistant Attorney General, Salem, waived appearance for respondent Fair Dismissal Appeals Board.

Gillette, Presiding Judge, Joseph, Chief Judge,* and Young, Judge.

GILLETTE, P. J.

---

* Joseph, C. J., *vice* Roberts, J.

## GILLETTE, P. J.

Petitioner was a permanent teacher formerly employed by respondent Douglas School District No. 4 (District). She seeks judicial review of a decision by the Fair Dismissal Appeals Board (FDAB) dismissing her appeal from the District's termination of her employment. FDAB had determined that it lacked jurisdiction because, it held, petitioner had not been dismissed from but had resigned her employment. We disagree with FDAB and reverse.

Petitioner, an elementary school teacher, was selected by the District's school board in early September, 1980, to be transferred from her then teaching assignment to a new assignment in a newly-constituted class at a new school. Upset with this plan, petitioner delivered a letter to her school principal on Friday, September 12, 1980, giving notice as of that day.

When she delivered her letter to her principal, petitioner offered to work an additional 60 days, as she believed she was required by law to do. *See* ORS 342.553, *infra.* The principal immediately forwarded her resignation notice to the District's superintendent. However, the principal did not inform the superintendent that petitioner was prepared to work for another 60 days.

Still on September 12, the superintendent wrote a letter to petitioner purporting to accept her resignation, stating in part:

"* * *[Y]ou are hereby informed that your resignation is accepted effective at the end of work today."

Also on that same day, the superintendent "employed" a replacement for petitioner. His letter to the replacement stated in pertinent part:

"I am pleased to inform you that you have been recommended for employment with the Roseburg Public Schools, commencing September 15, 1980. * * *

"Though the Board of directors cannot take formal action until its regular meeting of October 8, this letter will confirm your employment as a 'temporary' teacher

until such time that [sic] the board approves our recommendation. °* * *"¹

On September 15, 1980, the next teaching day, petitioner wrote a letter to the superintendent rescinding her resignation. She also reported for work at the new school but was informed that she no longer worked for the District. The next day, the superintendent wrote to petitioner, acknowledging her letter "purporting to rescind your resignation" and informing her that, because her resignation had been accepted on September 12 and because "we have committed employment to another person," there was no "teaching vacancy."

On October 8, 1980, the question of petitioner's resignation came before the District's school board, but no action was taken. On October 15, 1980, the school board approved the following motion:

"That the superintendent's acceptance of [petitioner's] resignation, effective September 12, 1980, is approved and ratified, the resignation is in all respects effective as of the superintendent's acceptance."

Petitioner sought FDAB review of the board's action, contending that it constituted a "dismissal." FDAB held otherwise and dismissed. Petitioner appeals.

Resolution of this controversy turns on petitioner's letter of September 12: whether it was an offer to resign; whether it required acceptance; if so, who could accept it and when; whether it could be withdrawn or revoked before acceptance; and, if so, what effect post-revocation "acceptance" would have. We consider the questions in that order.

■ The District's written policies provide that termination by a District employe is governed by ORS 342.545 and 342.553. School Board Policy Handbook § 5150. ORS 342.553(1) provides:

---

¹ September 15, 1980—the day the replacement's employment commenced—was a Monday. The superintendent's speed in filling the position appears to have been due in part to the fact that the position was with a new class scheduled to begin on that day, and he did not want any delays. His failure to discuss the matter further with petitioner appears to be due to the fact he was not informed of her offer to work another 60 days.

"(1) Any elementary or secondary teacher who has entered into a contract to teach in any public school and who resigns his position without first providing 60 days' written notice to the district superintendent or the notice required in the applicable collective bargaining agreement may have his teaching certificate suspended for the remainder of the school year by the Teacher Standards and Practices Commission upon notice of the resignation from the district school board to the commission. The commission shall notify the teacher of the suspension of the teaching certificate held by the teacher."

We find nothing in the collective bargaining agreement to vary the statutory 60-day notice. Although the parties and FDAB refer to petitioner's letter of September 12 as her "resignation," the letter itself states no more than that petitioner gave "notice" effective that date. The letter did not state how much notice, but petitioner did tell her principal that she would continue to teach for 60 days. Petitioner's letter, when forwarded to the superintendent, gave the notice required under ORS 342.553(1) to the superintendent.

■　　　　ORS 342.553(1) contemplates that the superintendent will forward a received notice to the school board, because the sanction of suspension for failure to give 60 days' notice may be imposed only "upon notice of the resignation *from the district school board* to the commission." (Emphasis supplied.) Because ORS chapter 342 does not require an additional notice from a teacher to a school board, it appears that notice to the superintendent is notice to the school board, at least if the superintendent forwards the notice to the school board.

ORS 342.545(2) governs termination of teacher contracts on a teacher's resignation. It provides:

"(2) A district school *board* may *release* a teacher from a contract *by mutual agreement.* No *board* is required to consider any resignation not in writing." (Emphasis supplied.)

Assuming that, when the written notice required in ORS 342.553(1) is forwarded to the school board, no further "resignation" need be tendered, the school board must consider the notice because it is in writing. After that

consideration, the school board "may release" the teacher from the contract "by mutual agreement."

■ ■   It is clear from these statutes that a "resignation" or notice of resignation effective within the next 60 days serves as an offer by the teacher to terminate the employment contract, and that the offer is not automatically accepted when tendered. If in writing, it must be first considered by the school board, which *may* release the teacher, *i.e.,* may accept or reject the offer. A *mutual agreement* to release is by nature an "agreement of rescission * * * under which each party agrees to discharge all of the other party's remaining duties of performance under an existing contract." Restatement of Contracts (Second) § 283(1). It is contractural in nature: it requires mutual assent and is supported by consideration of mutual promises to discharge remaining duties.

■   The statutes are also clear that the offer can be accepted only by the school *board.* The board is the employer; it hires teachers and makes the contracts with them. ORS 342.505(1). It gives notice of renewal or non-renewal of contracts. ORS 342.513. It has the authority to dismiss teachers. ORS 342.835; 342.895. It has the power to seek suspension of a teacher's certificate. ORS 342.553(1). The superintendent has express statutory power only to make recommendations to the school board on these topics, *see, e.g.,* ORS 342.895(2), with one exception: the superintendent has power to suspend *temporarily* a teacher for cause. ORS 342.875. Only the board may consent to other terminations, including resignations. ORS 342.545.

■ ■   The District argues that the board may delegate to the superintendent its authority to accept a teacher's resignation that is to be immediately effective, because that acceptance is a ministerial act. Even if that were true, petitioner's letter was not an immediately effective resignation. In any event, there was no record of any delegation here, so only the board had authority to accept petitioner's offer. It could exercise that authority only at a regular or special meeting. ORS 332.057. The offer was first presented to the board at a regular meeting October 8, 1980; at its meeting October 15, 1980, the board voted to "ratify" the

superintendent's "acceptance." However, there was no earlier "acceptance" to ratify on October 15. We view the board's vote, therefore, as its attempt to accept petitioner's offer. That attempt came too late, because before the board met to consider the offer, petitioner had rescinded or revoked the offer on September 15, 1980, and that revocation was communicated to the board before it voted to accept the offer.

■ ■ Restatement of Contracts (Second) §§ 36(1)(c) and 42 provide:

"§36.(1) An offeree's power of acceptance may be terminated by

"* * * * *

"(c) revocation by the offeror * * *.

"§42. An offeree's power of acceptance is terminated when the offeree receives from the offeror a manifestation of an intention not to enter into the proposed contract."

Petitioner's offer was revocable. It was not merely an option irrevocable for a specific time; neither was it made irrevocable by detrimental reliance in finding a replacement. Only the board could hire the replacement, and it had not done so at the time of revocation. The replacement teacher had been only recommended for employment and until October 8 was employed only as a temporary teacher. *See* ORS 342.815(9). Because petitioner's offer was revocable, she could revoke it before the board accepted it. *See, e.g., Alexander v. Alabama State Tenure Com'n, supra.* She did revoke on September 15, 1980, a month before the board attempted to accept, and the first work day after it was given. The board had received notice of the revocation, *see* Restatement of Contracts (Second) § 68; its power to accept was thereby terminated before its vote on October 15, 1980. Petitioner's teaching contract was not terminated by mutual agreement.

■ The District's refusal to permit petitioner to fulfill her contractual duties constitutes a *de facto* dismissal, albeit without the procedural protections afforded by the Fair Dismissal Law, ORS 342.805 *et seq.* The FDAB therefore erred in concluding that petitioner had resigned.

Reversed and remanded for reconsideration.