Argued and submitted June 6, 1983, Court of Appeals reversed July 10, 1984

PIERCE,
*Respondent on review,*

*v.*

DOUGLAS SCHOOL DISTRICT NO. 4,
*Petitioner on review,*

*and*

FAIR DISMISSAL APPEALS BOARD,
*Respondent.*

(CA A21227; SC 29156)

686 P2d 332

Eldon F. Caley, Roseburg, argued the cause for petitioner on review. With him on the brief and petition was Neuner, Dole, Caley & Kolberg, Roseburg.

Robert D. Durham, Eugene, argued the cause for respondent on review. With him on the response to the petition were Philip Schradle, and Kulongoski, Heid, Durham

& Drummonds, Eugene. On the brief were Jennifer Friesen, and Kulongoski, Heid, Durham & Drummonds, Eugene.

PETERSON, C. J.

## PETERSON, C. J.

An elementary school teacher, Ramona Pierce, claims that she was improperly dismissed from her employment. The Fair Dismissal Appeals Board (FDAB), which is the body charged with handling appeals from teacher dismissals, ORS 342.905, found that Pierce had resigned and therefore had not been dismissed from her employment. She appealed to the Court of Appeals, which reversed and remanded, holding that Pierce's written letter of resignation was ineffective, that the school district's actions constituted a "defacto dismissal," and that the FDAB had jurisdiction. 60 Or App 285, 653 P2d 243 (1982). This court concludes that Pierce was not dismissed, which ruling precludes FDAB jurisdiction. Therefore, the decision of the Court of Appeals is reversed and the FDAB order is reinstated.

### I

The facts are not in material dispute. Due to a shift in first grade population, the school board of Douglas School District No. 4 adopted a plan to create another first grade class at Sunnyslope Elementary School and to transfer a teacher from Fullerton Elementary School to Sunnyslope Elementary School. Pierce was selected as the teacher to be transferred and was so notified on September 11, 1980. The following day, Friday, September 12, Pierce delivered a letter to the Fullerton principal that read:

"Calvin C. Peterson, Principal
Fullerton IV Elementary

Dear Cal,

This is one of the most difficult decisions I have ever had to make. I love teaching and kids. I care a great deal about education and educating.

However, I feel at this point in time I must resign. I am giving notice effective September 12, 1980.

Sincerely,

Micky Pierce"

The principal asked Pierce to reconsider her resignation to no avail. Pierce was adamant, but said she would continue working, if necessary, for a period of 60 days. Later that day the principal forwarded the resignation notice to the

district superintendent, but the principal did not tell the superintendent that Pierce was willing to work another 60 days. The superintendent directed the principal to find a replacement teacher as soon as possible to teach the newly-created first grade class on the first day of school which was the following Monday. Later that day, September 12, the superintendent received this memo:

"TO:     Murl W. Anderson, Superintendent

FROM:   Scott W. Mutchie, Director of Elementary Education Michael Sheppard, Principal, Sunnyslope Elementary School

RE:      First Grade Teacher at Sunnyslope

Please accept this memo as our recommendation to hire Carolyn Ridley for the position of first grade teacher at Sunnyslope Elementary School effective Monday, September 15, 1980.

Carolyn has 1.5 years of experience and has been a most successful substitute in our area for the past two years."

Upon receiving a commitment from a satisfactory replacement, the superintendent wrote to Pierce on September 12. He stated in part:

"Your letter of September 12 to Mr. Peterson in which you announced your resignation effective this date has been forwarded to me and is hereby acknowledged."

"It has been the district's policy to hold resigning teachers to the sixty day notice required by ORS 342.553 unless a satisfactory replacement can be employed. Since we have a satisfactory replacement, you are hereby informed that your resignation is accepted effective at the end of work today."

On Monday, September 15, Pierce delivered a letter to the superintendent which read:

"On Friday September 12, 1980, I gave Cal Peterson a letter of resignation for my teaching position in Roseburg Public Schools. I hereby rescind that resignation. On Sunday September 14, 1980, I called Mike Shepard to tell him I would be available for work at Sunnyslope Elementary School on Monday morning September 15, 1980."

The superintendent rejected her attempt to withdraw her resignation and the school board ratified the superintendent's

acceptance of the resignation at its meeting of October 15, 1980.

The FDAB entered the following "ultimate findings and conclusions":

"The panel has concluded, with one member dissenting, that Mrs. Ramona Pierce resigned her position as a permanent teacher in Douglas County School District No. 4 on September 12, 1980. Her resignation was accepted by the chief executive officer of the district who had authority under the circumstances as outlined in the findings of fact, and the record as a whole. The resignation was complete with the acceptance on September 12, 1980, by the superintendent. Under these circumstances, it is the conclusion of a majority of the panel that no dismissal of Mrs. Ramona Pierce has occurred, and therefore the Fair Dismissal Appeals Board has no jurisdiction of this matter."

## II

Pierce argues that a teacher's resignation cannot be effective until accepted by the school board, and that her withdrawal of the resignation on September 15, 1980, nullified its effect. Resolution of this case turns on an interpretation of ORS 342.553(1) and ORS 342.545. ORS 342.553(1) provides:

"Any elementary or secondary teacher who has entered into a contract to teach in any public school and who resigns his position without first providing 60 days' written notice to the district superintendent or the notice required in the applicable collective bargaining agreement may have his teaching certificate suspended for the remainder of the school year by the Teacher Standards and Practices Commission upon notice of the resignation from the district school board to the commission. The commission shall notify the teacher of the suspension of the teaching certificate held by the teacher."

ORS 342.545 provides:

"(1) Sickness or other unavoidable circumstances which prevent the teacher from teaching 20 school days immediately following exhaustion of sick leave accumulated under ORS 342.596 shall be sufficient reason for the school board to place the teacher on leave without pay for the remainder of the regular school year and to terminate the teacher's employment without penalty on August 1 if the school board determines that the teacher is unable to resume teaching responsibilities at the beginning of the next fall term. This

subsection applies to teachers whose employment is based either upon contract or tenure, or both.

"(2)   A district school board may release a teacher from a contract by mutual agreement. No board is required to consider any resignation not in writing."

We trace the origin of ORS 342.545 and 342.553 to chapter 42, Oregon Laws 1905, which provided:

"That all teachers in the public schools of this State who shall willingly violate the terms of his or her contract for teaching by resigning his or her position as teacher without a written notice given to the school board at least thirty days before the time when the resignation shall take effect, shall have his or her certificate revoked by the authorities issuing same upon due notice from the school board, and shall be disqualified from teaching in the public schools of this State for the remainder of the school year; *provided,* that sickness or other unavoidable circumstances which prevent the teacher from teaching one month shall be sufficient reason for the termination of the contract without the notice herein required on the part of the teacher; *and provided further,* that a school board may release a teacher from a contract by mutual agreement." (Emphasis in original.)

The 1905 law had three basic provisions:

1.   The law had a liberal resignation provision. Teachers could resign, without risking decertification, at any time upon giving 30 days' written notice to the school board. Teachers whose resignations were not in writing or who resigned with less than 30 days' notice were to be decertified "for the remainder of the school year."

2.   Specified sickness authorized "termination of the contract without the notice." (The statute is unclear whether either party could terminate under this provision.)

3.   A school board could release a teacher from a contract "by mutual agreement."

The meaning of "resigning," as used in that statute, is not altogether clear. Early in the century, a shortage of qualified teachers existed. The purpose of the 1905 law and its successor statutes was to insure classroom continuity, "to

prevent teachers from moving from one school district to another and leaving classrooms without teachers."[1]

The 1905 statute suggests that a teacher's contract could be terminated without further liability on either party's part by either (1) resignation in accordance with the statute, (2) specified sickness, or (3) "mutual agreement." Of these three modes, only the third appears to require a mutual agreement. The statute, then as now, was silent on the question of the necessity for board acceptance of the teacher's resignation.

The statute was amended by Oregon Laws 1917, chapter 232, to read:

"Any teacher in the public schools of this State and any teacher who shall have entered into a valid contract to teach in any public school in this State, who shall willingly violate the terms of his or her contract for teaching by resigning his or her position as teacher within thirty days before the time when the term contracted to be taught shall begin or at any time during the period for which he or she shall have contracted to teach, shall have his or her certificate revoked by the authorities issuing same upon due notice from the school board, and shall be disqualified from teaching in the public schools of this State for the remainder of the school year, *provided,* that sickness or other unavoidable circumstances which prevent the teacher from teaching one month shall be sufficient reason for the termination of the contract without the notice herein required on the part of the teacher; *and provided further,* that a school board may release a teacher from a contract by mutual agreement; *and provided, further,* that no school board shall be required to consider any resignation unless the same be in writing and in the hands of the district clerk not later than thirty days before the time when the term contracted to be taught shall begin." (Emphasis in original.)

The principal significance of the 1917 amendments is that the time within which the teacher could "resign" and obtain the benefit of the statute was restricted to a point in time more than 30 days "before the time when the term contracted to be taught shall begin." Neither the 1905 statute

---

[1] Statement of Don Satchell to the Senate Education Committee in support of HB 2384, March 25, 1975.

nor the 1917 statute suggests that a timely resignation in proper form could be rejected by the school board.

In 1919 the 30-day period was changed to 60 days. Or Laws 1919, ch 78. In 1943 the 60-day period was changed to 90 days, and the sickness provision was enlarged to provide that "sickness or other unavoidable circumstances which prevent the teacher from teaching for one month shall be sufficient reason for the termination of the contract *by either party* thereto without penalty." (Emphasis added.)

In 1953, the text of the statute was amended in a respect not relevant to this case, and upon the effective date of the 1953 Oregon Revised Statutes, what had been one statute became two, ORS 342.640 and ORS 342.645. ORS 342.640 then read as follows:

> "Sickness or other unavoidable circumstances which prevent the teacher from teaching one month shall be sufficient reason for the termination of the teacher's contract, by either party thereto without penalty. A school board may release a teacher from a contract by mutual agreement. No school board may be required to consider any resignation not in writing."

ORS 342.645 then provided:

> "Any teacher in the public schools and any teacher who has entered into a valid contract to teach in any public school, who willingly violates the terms of his contract for teaching by resigning his position as teacher within 90 days before the time when the term contracted to be taught begins or at any time during the period for which he has contracted to teach, shall have his certificate suspended by the authorities issuing same upon due notice from the school board, and shall be disqualified from teaching in the public schools of this state for the remainder of the school year."

In 1965, ORS 342.640 and ORS 342.645 were amended in a minor way and were renumbered respectively as ORS 342.545 and 342.553.

In 1975, ORS 342.553(1) was amended to read as it does today. The most significant change was to permit a teacher to resign without risk of decertification at any time before or during a school year by giving "60 days written notice to the district superintendent."

## III

■ ■ Although the relationship between public school teachers and their school board employers is a contractual one, in some respects the contractual relationship is modified by statute. Like most other employed persons, a teacher has the *power* to quit at any time. A teacher, a machinist, corporate executive, or college president, with or without an employment contract, may quit his or her job at any time and may not be compelled specifically to perform an employment contract. *Harlow v. Oregonian Pub. Co.*, 45 Or 520, 527, 78 P 737 (1904); *Lumley v. Gye*, 2 E & B 216 (1853). But the *power* to quit in breach of an employment contract is not equivalent to the *right* to breach the contract. Consequences may flow from a breach, such as damages or injunctive relief.

Public school teachers may resign without risk of decertification if they comply with ORS 342.553(1) by giving "60 days written notice * * * or the notice required in the applicable collective bargaining agreement."[2] Teachers who fail to give proper notice run the risk of decertification.

■ There is no reference in ORS 342.553(1) or 342.545, or in any predecessor statute, to a requirement of "acceptance" of a resignation. Upon the expiration of 60 days, teachers who have given proper notice can leave their teaching positions without risk of decertification even if the school board does nothing. Acceptance of a teacher's resignation is not required in order for the resignation to be effective under ORS 342.553(1).

We are also convinced that the 60-day provision of ORS 342.553(1) was not enacted in order to give each teacher a 60-day remorse period within which the resignation could be withdrawn. The legislative history is convincing beyond question on that point. Before the 1975 amendments, and as early as 1917, teachers who resigned at any time during the school year or a specified period theretofore (which at various times was as little as 30 days or as great as 90) ran the risk of decertification for the remainder of the school year. In 1975,

---

[2] No provision of the collective bargaining agreement involved in this case is relevant.

the Oregon Education Association (OEA), on behalf of teachers, was pressing for a more liberal law, one which would give teachers more freedom to change jobs or leave jobs in midyear. The proposed changes were resisted by the Oregon School Boards Association and the Confederation of Oregon School Administrators, in part because of concern for "program continuity." The OEA-supported amendments were enacted with minor modification. *See* footnote 1.

After the 1975 amendments, as in 1905, a teacher's contractual relationship with a board could be terminated (other than by dismissal) in not less than four ways:

1. A teacher could resign by giving the notice required by ORS 342.553(1). With proper notice, there was no risk of decertification. The statute did not require acceptance in order for the resignation to be effective.

2. A teacher could resign (or quit or leave) without giving the notice required by the statute, risking decertification and possibly other legal actions.

3. The board could terminate the contract due to "sickness or other unavoidable circumstances * * *." ORS 342.545(1).

4. The contract could terminate by mutual agreement. ORS 342.545(2).

■■ As stated earlier, the 60-day notice provisions of ORS 342.553(1) largely concern methods by which teachers can resign during or before the contract term without running the risk of sanctions. Theoretically, a school board may act upon such resignations in various ways. The board might formally accept the resignation; it might reject the resignation; or it might do nothing. Insofar as sanctions against the teacher are concerned, the teacher's rights appear to be the same whichever choice the board makes: The teacher may leave after 60 days without fear of sanction if proper notice was given. Board acceptance, rejection or inaction upon the resignation is largely irrelevant.

This case does not concern the imposition of sanctions. Rather, the teacher claims that either or both ORS 342.545(2) and ORS 342.553(1) gave her the right to withdraw her resignation until it was accepted by the board. We disagree. The manifest purpose of the 60-day period is to give the

district time to find a replacement, thereby maintaining "program continuity." Neither ORS 342.545(2) nor 342.553(1) require acceptance in order for the resignation to be effective.[3]

ORS 342.553(1) has at least two goals. One is to give teachers more freedom to change jobs or leave jobs during the term of their employment. The other, which led to the 1905 enactment, is the goal of classroom continuity.

It is obvious that the statute contemplates a period of time during which the district can adjust its program to meet problems arising from a resignation, particularly an unanticipated resignation. Where, as here, the district, through its superintendent, has acted upon the resignation and given the teacher the assurance guaranteed by the statute, the mutual goals contemplated by the statute are achieved.

We hold that Pierce resigned under and in accordance with ORS 342.553(1).[4] The resignation was "acknowledged" by letter from the superintendent and with specific reference to ORS 342.553, he released Pierce from further contractual responsibility. The board could not later request decertification under ORS 342.553(1) by the Teacher Standards and Practices Commission. The act of the superintendent, who is the chief administrative officer of the district, is binding upon the board. His letter of acceptance was not a dismissal of the teacher. The district, through its chief administrative officer, relied upon and acted upon the resignation.[5]

---

[3] In essence, the issue briefed by Pierce in this case is whether the relevant sections of the Oregon Revised Statutes imply a statutory right for a teacher to withdraw a proffered resignation. She does not argue that underlying civil service or employment contract law provides a right to withdraw a resignation. Cf. *Armistead v. State Personnel Bd.*, 22 Cal 3d 198, 149 Cal Rptr 1, 583 P2d 744, 748 (1978), where the California Supreme Court held that:

"* * * unless valid enactments provide otherwise, an employee is entitled to withdraw a resignation if she or he does so (1) before its effective date, (2) before it has been accepted, and (3) before the appointing power acts in reliance on the resignation."

[4] For purposes of this case we assume that the notice was sufficient even though the written notice itself made no reference to the willingness to work for the 60-day period.

[5] We express no opinion whether a resigning teacher has a right to withdraw the resignation before there has been a change of position or before the resignation has been acted upon by the board or its agents. Cf. *Armistead v. State Personnel Bd.*, supra n 4; *Am. Fed. of Tchrs., Etc. v. Bd of Ed, Etc.*, 107 Cal App 3d 829, 840, 166 Cal Rptr 89, 95-96 (1980).

The teacher invoked and received the protection of ORS 342.553(1).

One final point needs addressing. ORS 342.545(2) provides:

"(2) A district school board may release a teacher from a contract by mutual agreement. No board is required to consider any resignation not in writing."

Pierce claims:

"* * * ORS 342.545(2), which governs teacher resignation, requires the *mutual agreement* of both parties to the employment contract in order to terminate the teaching contract. * * *" (Emphasis in original.)

▮▮▮▮▮ Although the end result in this case may be similar to the result had the teacher and the board executed a mutual agreement or mutual release, this is not a mutual release case.[6] A teacher contract can be terminated by mutual agreement but the statute does not require such an agreement in all cases. ORS 342.545(2) does permit a mutual release agreement in which "the minds of the parties must meet on an identical proposition which they both understand alike and to which they both assent in the same sense * * *." *Grider v. Turnbow*, 162 Or 622, 637, 94 P2d 285 (1939). *See also Financial Indemnity v. Howser*, 38 Or App 369, 372, 590 P2d 276, 278 (1979). Mutual release agreements take innumerable forms and are used for innumerable purposes. However, where a teacher resigns compelling the district to find a replacement, the case does not involve a "release of a teacher from a contract by mutual agreement."[7] The mutual agreement clause of ORS 342.545(2) is not applicable.

The decision of the Court of Appeals is reversed and the decision of the Fair Dismissal Appeals Board is reinstated.

---

[6] ORS 342.545(2) uses the expression "mutual agreement." We believe that "mutual agreement," as used in ORS 342.542(2), has essentially the same meaning as "mutual release."

[7] In his response to Pierce's written attempt to withdraw her resignation, the superintendent noted that "* * * your letter of resignation was not a request for a release from your contract but an outright resignation."